**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | |
|---|---|
| **TIMBERLAND 109 LLC,**<br><br>***Petitioner,***<br><br>**v.**<br><br>**HARRIS COUNTY GEORGIA,** ***et al.,***<br><br>***Respondents.*** | **CIVIL ACTION NO.**<br>**4:26-cv-00754-TES** |

**ORDER GRANTING RESPONDENTS' MOTION TO DISMISS IN PART**

Before the Court is a motion to dismiss by Respondents Harris County, Georgia, Susan Andrews, Bobby Irions, Scott Lightsey, Greg Gantt, and Robert Gant. [Doc 20]. In it, Respondents seek to dismiss Petitioner Timberland 109, LLC's petition for declaratory injunctive and mandamus relief and complaint for damages and attorney's fees under Federal Rule of Civil Procedure 12(b)(6). [*Id.*]; [Doc. 15]. For the following reasons, the Court **GRANTS** Respondents' motion **in part**.

## LEGAL STANDARD

Through Rule 12(b)(6), a defendant may "test the facial sufficiency" of a complaint by way of a motion to dismiss. *Ghee v. Comcast Cable Commc'ns, LLC*, No. 22-12867, 2023 WL 3813503, at *2 (11th Cir. June 5, 2023) (quoting *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1368 (11th Cir. 1997)). Such a "motion is an 'assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint still fails as

a matter of law to state a claim upon which relief may be granted.'" *Barreth v. Reyes 1, Inc.*, No. 5:19-cv-00320-TES, 2020 WL 4370137, at *2 (M.D. Ga. July 29, 2020) (citation omitted). However, a complaint will survive a Rule 12(b)(6)-based motion if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

Whether a complaint states a claim for relief is measured by reference to the pleading standard of Federal Rule of Civil Procedure 8—a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Barreth*, 2020 WL 4370137, at *2 (citation omitted). Rule 8 doesn't require detailed factual allegations, but it does require "more than unadorned, the-defendant-unlawfully-harmed-me accusations." *McCullough*, 907 F.3d at 1333 (citation omitted) (alterations adopted). When ruling on a motion under Rule 12(b)(6), it is a cardinal rule that district courts must accept the factual allegations set forth in a complaint as true. *Twombly*, 550 U.S. at 572. In accepting the factual allegations as true, courts are to construe the reasonable inferences from them in the light most favorable to a plaintiff. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

Therefore, to decide whether a complaint survives a motion to dismiss, courts use a two-step framework. *McCullough*, 907 F.3d at 1333 (citation omitted). The first step is to identify the allegations that are "no more than conclusions." *Id.* (quoting *Iqbal*, 556

U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* A plaintiff may use legal conclusions to structure a complaint, but they *must* "be supported by factual allegations." *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). When drafting a complaint, "[a] plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555).

Finally, the issue to be decided when considering a motion to dismiss "is necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The issue is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Id.* The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[ ] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 555. A complaint that tenders "'naked assertions' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (cleaned up).

## FACTUAL BACKGROUND

This action arises out of the Harris County Board of Commissioners' ("Board") final decision denying Petitioner's application for rezoning for parcel 084-045

("Property").[1] [Doc. 15, ¶ 1]. Petitioner submitted its rezoning application on November 20, 2025, requesting that the Property be rezoned from A-1 General Agricultural and Forestry District to R-1 Low-Density Residential because Petitioner cannot economically or "feasibly" develop or sell the Property under the current A-1 zoning. [*Id.* at ¶¶ 16–17]. On December 1, 2025, Petitioner supplemented its application with a revised master plan, yield plan, site analysis map, and soil map. [*Id.* at ¶ 17].

Before reaching the Board for final approval, Petitioner's application was recommended for approval by two other preliminary groups. Harris County's staff report recommended that the Board approve Petitioner's application with conditions that Petitioner agreed to comply with. [*Id.* at ¶ 18]. The Harris County Planning Commission also voted at a hearing to recommend that the Board approve Petitioner's application. [*Id.* at ¶ 20].

On March 2, 2026, Petitioner submitted a "Constitutional Rights Letter" to the Board, informing it of Petitioner's ability to challenge an unfavorable decision on various constitutional bases. [*Id.* at ¶ 28]. The Board held its hearing the next day. [*Id.* at ¶ 21]. Despite Petitioner's plans conforming with Harris County's zoning code, being compatible with Petitioner's proposed use for the land, and aligning with the welfare of the public (according to Petitioner), the Board denied the application by a vote of 3-2.

[1] The individually named Defendants sat on the Board at the time of the decision. [Doc. 15, ¶¶ 4–8].

[*Id.* at ¶¶ 23–26]. The Board left the portion of the written decision labeled "Reasons for Action" blank. [*Id.* at ¶ 27].

Petitioner subsequently filed this action and Respondent removed it. [Doc. 1]. After several months of litigation, Petitioner filed an unopposed motion to remand the Board's final decision back down to the Board for reconsideration. [Doc. 26]. The Court granted the unopposed motion. [Doc. 27]. Upon reconsideration, the Board denied Petitioner's application a second time. [Doc. 28]. Now, with the case returned to this Court, Respondent's motion to dismiss is ripe for review.

**<u>DISCUSSION</u>**

Respondents' first argument in favor of dismissal is that Petitioner's petition is "[b]arred by [s]overeign [i]mmunity and [m]ust be [d]ismissed in its [e]ntirety." [Doc. 20-1, p. 3]. Specifically, Respondents assert sovereign immunity under *Georgia's* constitution, arguing that the state has not waived sovereign immunity for declaratory judgment actions under these circumstances. [*Id.* at pp. 3–5]. While "[s]tate sovereign immunity may protect [respondents] from state claims in state court; *state* immunity . . . has no application to claims, in federal court, under Section 1983." *Hufford v. Rodgers*, 912 F.2d 1338, 1341 (11th Cir. 1990); *see also Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1340 n.26 (11th Cir. 2003) ("state sovereign immunity has no application in federal court in § 1983 cases."). "The relevant inquiry may fall under the Eleventh Amendment [or other immunities], however, because [Respondents didn't] raise[] such arguments, the

Court will not address these issues." *Eiras v. Fla.*, 239 F. Supp. 3d 1331, 1339 (M.D. Fla. 2017).

Since the parties' sovereign immunity arguments apply only to Petitioner's state law claims, the Court turns first to Petitioner's five federal claims brought under 42 U.S.C. § 1983:

- A regulatory taking claim under the Fifth Amendment to the United States Constitution.
- A substantive due process claim under the Fourteenth Amendment.
- A procedural due process claim under the Fourteenth Amendment.
- An equal protection claim under the Fourteenth Amendment.
- A claim for attorney's fees under 42 U.S.C. § 1988.

The Court takes each of Petitioner's § 1983 claims in turn.

First, Petitioner's regulatory taking claim under the Fifth Amendment fails for several reasons.[2] [*Id.* at pp. 14–16, 28–32]. Petitioner argues that the Board's denial of Petitioner's application for rezoning and subsequent enforcement of the A-1 zoning

---

[2] The Court notes that Petitioner's pleadings include allegations about ripeness for its takings claim. [Doc. 15, ¶ 48]. Naturally, the Court conducted a ripeness inquiry and determined that Petitioner's takings claim is ripe. Of note, the standard Petitioner seems to be articulating in its pleadings is no longer the ripeness standard for takings claims. *See Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 185 (2019) (overruling the "state-litigation requirement" for a federal takings claim to be ripe). Instead, "[a] property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it." *Id.* The Board's decision was a final decision within this context: it was a zoning plan specifically applied to Petitioner's property. *See Lozman v. City of Riviera Beach, Fla.*, 119 F.4th 913, 917–18 (11th Cir. 2024). Therefore, Petitioner's claim is ripe under the new standard.

"affects a taking of substantial or all economic value for the Subject Property without just and adequate compensation." [*Id.* at ¶ 115]. Respondents assert that this is not a proper takings claim, and that Petitioner failed to adequately plead the elements of a takings claim. [Doc. 20-1, pp. 5–7].

The Fifth Amendment to the United States Constitution reads, in relevant part, that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. Amend. V. The Supreme Court recognizes two kinds of takings: physical takings and regulatory takings. *Alford co-TR. of Lionel D. Alford, Jr., & Tammy Nix Alford Revocable Tr. v. Walton Cnty.*, 159 F.4th 844, 854 (11th Cir. 2025) (citing *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147–49 (2021)). To state a claim for a regulatory taking, as Petitioner alleges here, Petitioner must first show that it had a protected property interest in rezoning the property. *See Givens v. Ala. Dept of Corr.*, 381 F.3d 1064, 1066 (11th Cir. 2004); *see also Maron v. Chief Fin. Officer of Fla.*, 136 F.4th 1322, 1329 (11th Cir. 2025) ("a takings claim requires a plaintiff to 'demonstrate that he possesses a property interest that is constitutionally protected.'") (quoting *Givens*, 381 F.3d at 1066)). "Only if the [petitioner] actually possesses such an interest will a reviewing court then determine whether the deprivation or reduction of that interest constitutes a 'taking.'" *Givens*, 381 F.3d at 1066 (quoting *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1198 (9th Cir. 1998)).

The threshold inquiry, then, is whether Petitioner had a property interest in the rezoning. "Individuals can have a protected property interest . . . when they have 'a legitimate claim of entitlement to it.'" *Teramore Dev., LLC v. City of Americus,* No. 1:20-cv-263 (LAG), 2022 WL 23057418, at *7 (M.D. Ga. Mar. 30, 2022) (quoting *Barnes v. Zaccari*, 669 F.3d 1295, 1303 (11th Cir. 2012)). "[I]n the context of property rights for rezoning, landowners must show that: (1) they complied with all requirements, and (2) the local government has no discretion to deny the rezoning application." *Id.* (citing *Banks Cnty. v. Chambers of Ga., Inc.*, 444 S.E.2d 783, 786 (Ga. 1994)); *see also Exec. 100, Inc. v. Martin Cnty.*, 922 F.2d 1536, 1548 (11th Cir. 1991) (Clark, J., concurring in part) ("To determine whether appellants have a cognizable interest in having their property rezoned industrial, we look to state law.") (citing *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)).

Petitioner alleges that it complied with all necessary requirements, but it has not shown that Respondents lacked discretion to deny the rezoning application. [Doc. 15, ¶¶ 23–25]; [Doc. 20-2, p. 27 ("the Board of Commissioners in its decision on the application for a proposed amendment may, *in its legislative discretion*, approve or deny

the application for proposed amendment . . . .") (emphasis added)].[3] Accordingly, Petitioner "cannot show that [it was] entitled to have [its] property rezoned," and thus, it does not have a protectable property interest. *Teramore*, 2022 WL 23057418, at *7.

Even if it had a protectable interest, Petitioner's Fifth Amendment claim would still fail. A restriction on use can qualify as a regulatory taking "if the restriction—in the Supreme Court's words—'goes too far.'" *Alford*, 159 F.4th at 854 (quoting *Yee v. City of Escondido*, 504 U.S. 519, 528–29 (1992)). Relevant here, there are two types of regulatory actions that can constitute a taking. First are "regulations that completely deprive an owner of '*all* economically beneficial use' of [its] property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005) (citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992)). Second are all other non-physical takings caused by regulations, which require an "ad hoc" factorial analysis. *Id.* at 538–39 (citing *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978)); *see also Alford*, 159 F.4th at 855.

Petitioner relies on both types of regulatory takings. [Doc. 15, ¶¶ 47, 49, 115]. Specifically, Petitioner alleges that "[t]he denial of the Rezoning Application deprives the [Property] of *substantial and/or all* economic value . . . ." [*Id.* at ¶ 49 (emphasis

---

[3] The Court can consider the Harris County Unified Development Code ("UDC") at this stage without converting the motion to dismiss into a motion for summary judgment because it was attached to the motion to dismiss; it is central to Petitioner's claim; Petitioner references it in its petition; and its contents are not disputed. *Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. 2023); [Doc. 15, ¶¶ 33, 45, 52, 54, 61, 66, 69, 78, 82, 86, 89, 92–96, 100, 114]. The Court notes that Timberland disputes the validity of the UDC because it alleges procedural deficiencies in the enactment of the UDC, but it does not dispute the validity of the content of the UDC that is attached to Respondents' motion to dismiss. *See* [Doc. 15, ¶ 86].

added)]. For the all-economically-beneficial-use test, Petitioner alleges that the Property's topography makes it unfit for agricultural use, "or any other use allowable under the Harris County UDC."[4] [*Id.* at ¶ 52]. Petitioner specifically names "agricultural use," but A-1 also allows forestry. [Doc. 15, ¶ 16]; [Doc. 20-2, p. 24].

However, Petitioner's own filings show that the property still has an economic use. *See Michel v. NYP Holding, Inc.*, 816 F.3d 686, 707 (11th Cir. 2016) ("(T)he Court is not bound to accept the truth of general allegations in a complaint where they are contradicted by specific factual details in attached exhibits . . . ."). The plans and site maps Petitioner submitted with its petition repeatedly note that the property is currently "wooded" or "forested."[5] *See* [Doc. 15-1, pp. 17–19]; *see also* [Doc. 15-3, p. 4]. Owning a "wooded" property zoned for forestry use certainly does not mean that the zoning has deprived Petitioner of *all* economically beneficial uses. *Lingle*, 544 U.S. at 538 (citing *Lucas*, 505 U.S. at 1019); *cf.* [Doc. 15-3, p. 4 ("The property as zoned has value . . . .")]. After all, Petitioner presumably purchased the property, indicating that it had some economic value to it. Petitioner has not met the high bar of showing that the A-1 zoning classification deprives its land of *all* economically beneficial uses.

---

[4] It also alleged that the highest and best use of the property is as a residential development. [Doc. 15, ¶ 51].

[5] The Court may consider documents attached to the petition at the motion to dismiss stage. *See Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) ("Ordinarily we do not consider anything other than the face of the complaint and the documents attached thereto when analyzing a motion to dismiss.").

That brings the Court to the substantial-economic-deprivation-factors test. Simply put, Petitioner's allegations are not sufficient for this type of deprivation, either. The factors for this analysis are "the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action." *Alford*, 159 F.4th at 855 (quoting *Horne v. Dep't of Agric.*, 576 U.S. 350, 360 (2015)). The government action here, of course, was denial of a rezoning application. That alone leans against finding a taking. After all, the Eleventh Circuit Court of Appeals has noted that "zoning decisions, as a general rule, will not usually be found by a federal court to implicate constitutional guarantees" and has disinclined federal courts "to sit as a zoning board of review." *Greenbriar Vill., L.L.C., v. Mountain Brook, City*, 345 F.3d 1258, 1262 (11th Cir. 2003); *see also Penn Cent. Transp.*, 438 U.S. at 125 ("Zoning laws are, of course, the classic example . . . which have been viewed as permissible government action even when prohibiting the most beneficial use of the property.").

Petitioner did not specifically allege the other factors: economic harm or its investment-backed expectations. But the Court notes that "simply because [Petitioner] cannot use the property as 'exactly what it originally wanted does not mean that its investment-backed expectations are eradicated.'" *ALA Mgmt., LLC v. Hall Cnty.*, No. 24-10618, 2024 WL 4449752, at *3 (11th Cir. Oct. 9, 2024) (quoting *Baytree of Inverrary Realty Partners v. City of Lauderhill*, 873 F.2d 1407, 1410 (11th Cir. 1989)). Simply put, denying

Petitioner the opportunity to put the property to its highest and best use (from landowner's perspective) is not a taking under current precedent.[6] *See id.* (citing *Nasser v. City of Homewood*, 671 F.2d 432, 438 (11th Cir. 1982)). Petitioner's § 1983 Fifth Amendment taking claim fails.

Second, Petitioner's § 1983 due process claim under the Fourteenth Amendment fails for several reasons. [Doc. 15, pp. 17–18, 28–32]. Petitioner alleges both a substantive and procedural due process claim. [*Id.* at ¶ 61 ("Harris County failed to comply with the minimum procedures . . . .")]; [*Id.* at ¶ 119 ("the . . . continued enforcement of the invalid Zoning Map . . . is a deprivation of substantive due process . . . .")]; *see also* [Doc. 24, pp. 9–14]. The Court addresses both due process arguments in turn, beginning with substantive due process.[7]

"It is well established that 'the substantive component of the Due Process Clause protects those rights that are "fundamental," that is, rights that are "implicit in the

[6] The Court also notes that this is not a situation where the county government *adopted* a regulation that, via its application to the landowner, took away all or substantially all economic value. Rather, Petitioner bought the Property knowing of its current zoning, went through the process to change that zoning and then sued the Board when it refused to change the zoning designation as Petitioner prefers. In a very real sense, there is no *new* regulation that "took" Petitioner's property. This reasoning adds additional weight to the Court's dismissal of this claim.

[7] The Court notes at the outset that a claim under the substantive due process clause is questionable. As the Eleventh Circuit put it, "[t]he doctrine of substantive due process does violence to the text of the Constitution, enjoys no historical pedigree, and offers judges little more than shifting and unilluminating standards with which to protect unenumerated rights." *Eknes-Tucker v. Governor of Ala.*, 114 F.4th 1241, 1243 (11th Cir. 2024). The Court reiterates and endorses the Circuit's skepticism. After all, "the doctrine can empower judges to 'usurp' authority that the Constitution leaves to elected representatives . . . ." *Id.* at 1245. With that said, substantive due process jurisprudence in the zoning context has not been overruled in the Eleventh Circuit, so the Court proceeds forward with its analysis.

concept of ordered liberty."'" *Kentner v. City of Sanibel*, 750 F.3d 1274, 1279 (11th Cir. 2014) (quoting *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994)). The Constitution creates fundamental rights. *Id.* (citing *DeKalb Stone, Inc. v. County of DeKalb*, 106 F.3d 956, 959 n.6 (11th Cir. 1997)). Property interests do not come from the Constitution, but instead from "independent sources such as state law." *Id.* (quoting *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Therefore, "there is generally no substantive due process protection for state-created property rights." *Id.* But there is one exception: when someone's state-created rights "are infringed by a 'legislative act,'" substantive due process "protects that person from arbitrary and irrational government action." *Id.* (quoting *Lewis v. Brown*, 409 F.3d 1271, 1273 (11th Cir. 2005)).

As explained above when discussing takings, Petitioner possesses no *right* to have its property rezoned as it wished. Petitioner argues that it has a right, as the owner of the property, to use and enjoy it. [Doc. 24, p. 11 (citing O.C.G.A. § 51-9-1)]. Undoubtedly true. But such a right does not include the right to have one's property changed from one zoning status—which Petitioner was using and enjoying—to another, which Petitioner alleges is the highest and best use of the property. Even if there was a right here, Petitioner's substantive due process claim still fails because it did not show that denial of its application was a "legislative act" for substantive due process purposes. *See Kentner*, 750 F.3d at 1280 (stating that local governing bodies often perform both executive and legislative acts, and then stating that "[e]xecutive acts

typically arise from the ministerial or administrative activities of the executive branch and characteristically apply to a limited number of people, often to only one," whereas "[l]egislative acts . . . generally apply to a larger segment of—if not all of—society . . . ."); *see also Flagship Lake Cnty. Dev. No. 5, LLC v. City of Mascotte*, 559 F. App'x 811, 816 (11th Cir. 2014) ("local government's denial of a request to re-zone the plaintiffs' property was 'a textbook executive act'" because this decision affected only a limited number of people, namely the plaintiffs.") (quoting *Lewis*, 409 F.3d at 1273 (same)); *see also Bass v. City of Forsyth, Ga.*, No. 5:06-CV-278HL, 2007 WL 4117778, at *4 n.4 (M.D. Ga. Nov. 16, 2007) ("This Court is, however, inclined to find that deciding on rezoning application, regardless of the outcome, is an executive act.").[8]

As for procedural due process, Respondents argue that Petitioner's claim should be dismissed because the state provides an adequate procedural remedy. [Doc. 30, p. 5]. To start, the Court is not convinced that Petitioner can bring a procedural due process claim here. Assuming, without deciding, that Respondents' actions in adopting the

---

[8] Although Petitioner did not explicitly argue it here, the Court finds it prudent to briefly discuss O.C.G.A. § 36-66-5.1 and O.C.G.A. § 36-66-3, which Petitioner pointed to in its sovereign immunity arguments. [Doc. 15, ¶ 10]. Those statutes define "zoning decisions," and then say that zoning decisions are "legislative in nature." §§ 36-66-5.1(a)(1), 66-3. The Court is *not* saying whether the decision here would qualify as a "zoning decision" under Georgia law. The Court raises this point to say that, while state law might define the actions here as legislative as that term is used in the statute, "it is the duty of federal courts to independently determine whether a government act is executive or legislative for the purposes of applying substantive due process principles." *Lewis*, 409 F.3d at 1274. Importantly, "[w]hile state law may inform our independent inquiry, it is not determinative of it." Put simply, just because a Georgia statute might define Respondents' actions here as legislative—as that term is used in the statute and assuming the actions satisfy the statute's prerequisites—does not mean that the actions are legislative for "substantive due process rights under the *federal* Constitution." *Id.*

UDC and zoning map were legislative in nature, Petitioner cannot assert a violation of due process rights. *See 75 Acres, LLC v. Miami-Dade Cnty.*, 338 F.3d 1288, 1294 (11th Cir. 2003) ("if government action is viewed as legislative in nature, property owners generally are not entitled to procedural due process."). The remedy for legislative acts, instead, lies in the voting power of injured citizens. *Id.* ("General statutes . . . are passed that affect the . . . property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected . . . by their power, immediate or remote, over those who make the rule.") (quoting *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915)).

Additionally, failure to follow state procedures does not constitute a federal due process claim. *See Maddox v. Stephens*, 727 F.3d 1109, 1124 n.15 (11th Cir. 2013) ("[T]he mere failure to follow state procedures does not necessarily rise to the level of a violation of federal procedural due process rights."); *see also United States v. Davila-Mendoza*, 972 F.3d 1264, 1269 (11th Cir. 2020) ("we generally presume statutes to be constitutional"). The Court is not convinced that Petitioner's allegations regarding the Board's failure to properly follow Georgia's statutory framework for enacting a zoning plan and map rise to the level of a federal constitutional violation. That remedy lies in state law. Indeed, Petitioner brings a claim under state law for these allegations. [Doc. 15, p. 22]. Petitioner's federal due process claim is due to be dismissed without any analysis on the merits.

Even if Petitioner could bring a due process claim, it is still due to be dismissed because adequate state law remedies exist. "It is axiomatic that, in general, the Constitution requires that the [S]tate provide fair procedures and an impartial decisionmaker before infringing on a person's interest in life, liberty, or property." *Philex, Inc. v. Davis*, No. 5:22-CV-00420-TES, 2025 WL 2484019, at *3 (M.D. Ga. Aug. 28, 2025) (quoting *McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir. 1994) *abrogation on other grounds recognized by Littlejohn v. Sch. Bd. of Leon Cnty.*, 132 F.4th 1232, 1239 (11th Cir. 2025)). To establish a procedural due process claim, Petitioner must show: "(1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process." *Id.* (citing *Foxy Lady, Inc. v. City of Atlanta*, 347 F.3d 1232, 1236 (11th Cir. 2003)).

However, even if a party suffers a procedural deprivation, "there is no procedural due process violation unless the State 'refuses to make available a means to remedy the deprivation.'" *Id.* (quoting *McKinney*, 20 F.3d at 1563). In other words, if "adequate state remedies were available," Petitioner "failed to state a procedural due process claim." *Ingalls v. U.S. Space & Rocket Ctr.*, 679 F. App'x 935, 944 (11th Cir. 2017) (quoting *Cotton v. Jackson*, 216 F.3d 1328, 1330 (11th Cir. 2000)).

Petitioner has an adequate remedy under state law. Petitioner can, and did, bring claims under both Georgia statutory and constitutional law for failure to provide adequate notice, hearings, and other process before Harris County adopted the UDC

and its zoning map. *See* [Doc. 15, p. 22]; O.C.G.A. § 36-66-5.1; Ga. Const. Art. I, § 1, ¶ 1 ("No person shall be deprived of life, liberty, or property except by due process of law."). And, like Petitioner did here, if those claims were to somehow fail, it may seek a writ of mandamus under Georgia law. [Doc. 15, p. 15]; O.C.G.A. § 9-6-20. Georgia's courts "possess the power to remedy [Petitioner's] loss both in terms of damages and equitable relief," so Georgia's state remedies are adequate. *McKinney*, 20 F.3d at 1564.

As the Court just stated, Petitioner sought state relief here simultaneous with its federal relief. *See generally* [Doc. 15]. But that is irrelevant for the federal procedural due process inquiry as the inquiry does not require exhaustion. Once again, if state law provides an adequate remedy, "then there is no federal procedural due process violation regardless of whether the [petitioner] has taken advantage of the state remedy or attempted to do so." *Horton v. Bd. of Cnty. Comm'rs of Flagler Cnty.*, 202 F.3d 1297, 1300 (11th Cir. 2000).[9] Petitioner "can obtain the state remedy without an accompanying

[9] The Court notes that the procedural posture of this case is identical to that of *Horton*. There, the plaintiffs asserted federal and state law claims against county commissioners for the board's zoning decisions. *Horton*, 202 F.3d at 1298. The commissioners removed the case to federal court and then moved to dismiss. *Id.* at 1299. In other words, the plaintiffs in *Horton* simultaneously attempted to exercise their state and federal remedies, just like Petitioner here. The Court also acknowledges that *Horton* is merely guidance because the Eleventh Circuit ultimately found it lacked jurisdiction to review the district court's remand order. *Id.* at 1302. Accordingly, all the Court in *Horton* said, by its own admission, was "dicta." *Id.* However, it was dicta "in an attempt to dispel confusion caused by a prior opinion," and this Court finds its clarifications instructive here. *Id.*

federal claim." *Id.* Petitioner's federal procedural due process claim also fails, which means both of Petitioner's federal due process claims fail.[10]

Third, Petitioner's equal protection claim fails. The Equal Protection clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. Equal protection cases "generally involve 'governmental classification and treatment that affects some discrete and identifiable group of citizens differently from other groups.'" *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1351 (11th Cir. 2021) (quoting *Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc.*, 682 F.3d 1293, 1296 (11th Cir. 2012)). But some equal protection cases involve "class-of-one" claims "where 'the identifiable group that was discriminated against consisted solely of the [petitioner].'" *Id.* (quoting *Corey*, 682 F.3d at 1297 n.2). The Eleventh Circuit specifically has "allowed class-of-one claims for 'the government's regulation of property'" *Id.* (quoting *Engquist v. Or. Dep't of Agric.*, 5532 U.S. 591, 602 (2008)).

"To succeed on a class-of-one claim in a zoning case, the [petitioner] must show that '[it] has been intentionally treated differently from others similarly situated and

[10] Even though Petitioner asserts in its Response that it only brings its procedural due process claim for the adoption of the UDC and zoning map, its petition blatantly challenges the Board's decision to deny Petitioner's application for rezoning. [Doc. 15, ¶ 58 ("The final decision by the Board of Commissioners to deny the Rezoning Application constitutes a substantive deprivation of property without due process of law in violation of the Fourteenth Amendment . . . .")]. Therefore, the Court notes that adequate state law remedies exist for the rezoning denial, too. Namely, Petitioner can—as it has done here—seek review of the Board's decision, a declaratory judgment as to the legality of the Board's decision, and injunctive relief. *See* O.C.G.A. § 36-66-5.1(a); *see also* Ga. Const. Art. I, § II, ¶ V.

that there is no rational basis for the difference in treatment.'" *Id.* (quoting *Campbell v. Rainbow City*, 434 F.3d 1314). Petitioner "must show that those 'others similarly situated' are 'prima facie identical in all relevant respects.'" *Id.* (quoting *Campbell*, 434 F.3d at 1314). To evaluate whether other persons are similarly situated, courts "look at the state action 'in light of the full variety of factors that an objectively reasonable governmental decisionmaker would have found relevant in making the challenged decision.'" *Id.* (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1203 (11th Cir. 2007)).

This is a class-of-one claim in a zoning case. Petitioner alleges that "[t]he final decision by the Board of Commissioners to deny the Rezoning Application constitutes a denial of equal protection of the law in violation of the Fourteenth Amendment . . . ." [Doc. 15, ¶ 67]. The denial of its application applied to a class of one: Petitioner. Moreover, it was a zoning decision. Therefore, the standard set out in *Burns* applies here and the Court considers the factors a reasonable governmental decisionmaker would have found relevant to make the rezoning decision. 999 F.3d at 1351. Petitioner attached the staff report to its petition, which lays out the criteria for rezoning under the Harris County UDC. [Doc. 15-3, pp. 3–6].

The factors for rezoning under the Harris County UDC are: (1) "whether the zoning proposal will permit a use that is suitable in view of the use and development of adjacent or nearby property;" (2) "whether the zoning proposal will adversely affect the existing use or usability of adjacent or nearby property;" (3) "whether the property

affected by the zoning decision has a reasonable economic use as currently zoned;" (4) "whether the zoning decision will result in a use which will or could cause a safety concern or an excessive or burdensome use of existing streets, transportation facilities, utilities, or schools;" (5) "whether the zoning decision conforms with the policy and intent of the Harris County Comprehensive Plan;" and (6) "whether there are other existing or changing conditions that may affect the use and development of the property in question and support either the approval or disapproval of the zoning application." [*Id.*]. Therefore, Petitioner must allege sufficient factual material to show that other properties are prima facia similar in those six areas, at minimum.

Petitioner alleges that the Board "approved four (4) phases of rezoning applications to R-1 Residential zoning (Phase 1 in 2004, Phase 2 in 2006, Phase 3 in 2007, and Phase 4 in 2009) from a directly adjacent and similarly situated subdivision development, Timberland." [Doc. 15, ¶ 71]. The petition contains similar allegations for "Steele Creek," "Abberly Lakes," and "Boyd Branch," which are "nearby and similarly situated subdivision developments." [*Id.* at ¶¶ 72–74]. Petitioner then alleges that "[a]ll of the above subdivisions are similarly situated properties to the Subject Property." [*Id.* at ¶ 75].

However, the only alleged *fact* in these allegations to show that these developments were similarly situated to Petitioner's property is that they were either "nearby" or "directly adjacent." While location is undeniably relevant to the zoning

inquiry, Petitioner must show that the other properties were prima facia similar in *all relevant aspects*. Location certainly is part of those six factors under the Harris County UDC, but it alone is insufficient.[11] Petitioner's equal protection claim fails because it failed to adequately plead other similarly situated lands or projects.

Accordingly, the Court **GRANTS** Respondents' motion to dismiss **in part**, and **DISMISSES** all of Petitioner's § 1983 federal claims. [Doc. 20]. Since there are no remaining § 1983 claims, the Court also **GRANTS** Respondents' motion to dismiss as to Petitioner's 42 U.S.C. § 1988 attorney's fees claim. *See* 42 U.S.C. § 1988(b) (allowing fees for prevailing parties in § 1983 lawsuits).

Finally, federal courts may exercise supplemental jurisdiction over state law claims "in any civil action of which the district courts have original jurisdiction." 28 U.S.C. § 1367(a). "District courts may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

[11] Absent other allegations, it is difficult to articulate specific similarities Petitioner did not allege. But here are a few theoretical examples. Petitioner did not allege that the other developments had similar densities or acreage per plot. It did not show they had the same kinds of roads or infrastructure. It did not show that they were subject to the same kinds of restrictive covenants before or after development. Since the other properties were rezoned in the past—with Steele Creek and Timberland beginning rezoning over twenty years ago—it did not show that the existing or rezoned ordinances were the same as the existing and requested rezoned ordinance provisions applicable to Petitioner's land today. [Doc. 15, ¶¶ 71–72]. The Court is, of course, not exacting a standard of exhaustive perfection on Petitioner, but is instead making the point that Petitioner's barebones allegations are insufficient.

"[S]tate courts, not federal courts, should be the final arbiters of state law," and when a federal court "has dismissed all federal claims from a case, there is a very strong argument for dismissal, especially where the federal claims are dismissed prior to trial." *Ingram v. Sch. Bd. Of Miami-Dade Cnty.*, 167 F. App'x 107, 108 (11th Cir. 2006) ("state courts, not federal courts, should be the final arbiters of state law") (quoting *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997)). "[D]istrict courts may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). With no remaining federal claims, the Court **DECLINES** to exercise supplemental jurisdiction over Petitioner's claims under Georgia law and **REMANDS** the case back to the Superior Court of Harris County, Georgia. *See Mueller v. Walmart Corp.*, 191 F.4th 1305, 1310–11 (11th Cir. 2026); *see also Ingram*, 167 F. App'x at 108.

**SO ORDERED**, this 24th day of November, 2026.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**